## SUPREME COURT.

HENRY A. HARTT, THOMAS J. HALL and WILLIAM E. WHITING agt. CHAS. R. HARVEY, CHAS. B. TOMPKINS and others.

The *inspectors of election,* for an election of officers in a *religious incorporation,* are the judges of the *qualifications of the voters,* and they must *decide when the vote is offered,* and if in favor of receiving the vote, their decision is *final.* They have no power or authority after votes are deposited to enter into any examination of the qualifications of the voters, and count or reject votes on that ground, or to allow to either party the benefit of votes *offered* but not *received.*

A *certificate* of an election given by the inspectors, under their hands and seals, that a person has been duly elected to an office, is *prima facie* evidence of his right. But where such certificate recites the facts upon which it was given, the right exists of going behind it to inquire into such facts and the validity of the election.

A *certificate* is not essential to enable the party elected to take his office. If inspectors neglect or refuse to give a certificate, the party will be declared entitled to the office.

An *injunction* restraining defendants who have no right to an office, from assuming to act as such, cannot be granted in aid of the relief claimed by the plaintiffs which seeks *compensation in damages* by reason of the wrongful withholding of the certificate of election and keeping the plaintiffs out of office, the remedy is in a court of law.

Nor will an *injunction* be granted to determine the *right to an office*, unless the jurisdiction of the court attaches by reason of some considerations in the particular case, by reason of which a court of law cannot furnish adequate relief. The only way to get rid of officers illegally elected (unless there is jurisdiction in equity,) in religious corporations, is by *quo warranto*, and this remedy is entirely ample.

Nor will an *injunction* be granted on the ground *of fraud in the inspectors* of election in counting the votes and awarding the certificate of election to the defendants. Although fraud may be involved in the election, yet the right being a legal one, and a legal remedy furnished, adapted to the very case, there is no necessity to resort to a court of equity for relief.

*New York Special Term, May*, 1860.

MOTION by plaintiffs to continue a temporary injunction restraining the defendants, Harvey and Tompkins, from acting or assuming to act as trustees of the Society of the Church of the Puritans, in the city of New York. And also a like motion by the defendants, to restrain the plaintiffs from acting or assuming to act as trustees of said society, and for a modification of the plaintiffs' injunction. The facts will fully appear in the opinion of the court.

MULLIN, Justice. In order to decide the motions made in this cause, an investigation of the merits, to some extent is necessary, and the facts essential to an understanding of the case are briefly these : In March last, the annual meeting for the election of trustees was held by the religious society located in this city, duly incorporated and known as the Society of the Church of the Puritans. The defendants, White and Smith, were duly appointed inspectors of the election, pursuant to the provisions of the general law relating to the incorporation of religious societies. At the election, 64 votes were received by the inspectors for persons to fill the vacancies in the office of

trustees of said society, which would occur in a few days subsequent to said election. There were nine trustees of the society—divided into three classes of three each, the term of office of one of such classes expiring each year. There were, therefore, three vacancies to be filled at said election. The plaintiffs were candidates to be voted for to fill said vacancies, and so were the defendants, Harvey and Tompkins, and one Bennett. The ballots of the persons voting were delivered to the inspectors; some of them offering to vote were challenged, on the ground that they were not legal voters at said election, and they were so declared by the said inspectors, and their votes rejected. After the votes were all received they were counted by the inspectors, and 64 votes were found in the box. The poll list kept by the clerk had but 51 names upon it. There is said to have been some confusion in the room, and the discrepancy between the poll list and count may be and probably is thus accounted for.

After the count, the inspectors declared the result of the election to be : That the plaintiffs had each 33 of the votes so as aforesaid received and counted, and the defendants Harvey and Tompkins, had each 31; and said Bennett had 27 votes and one Thomas Rondy, 3 votes.

Afterwards, and on the 23d of March, the said inspectors executed under their hands and seals a certificate, in which they certify and declare, that at said election 64 votes were cast for trustees, 33 of which appeared to be given for Hall, 33 for Whiting, and the same number for Hartt; 31 for Harvey, and the like number for Tompkins; 27 for Bennett and 3 for Rondy, and that they as inspectors declared the apparent result at the time; but very soon thereafter, and before they had prepared the certificate of election, evidence of a nature entirely conclusive and satisfactory was produced before them proving that at least six illegal votes were cast, and those six contained the names of the plaintiffs, and that these were counted as

part of the 33 votes for them, as above stated. The certificate then proceeds as follows : " We therefore certify that Charles R. Harvey and Charles B. Tompkins have a plurality and a majority of the legal votes cast, and are duly elected trustees of the said society, to serve for three years from the 31st day of March, instant; that between the said Thomas J. Hall, William E. Whiting, Henry A. Hartt, and James D. Bennett, there was a tie vote, and neither of them is duly elected. All which is certified, &c." This certificate was delivered to the defendants, Harvey and Tompkins, who still hold it, and by virtue of it they claim to be duly elected trustees of said society for the term of three years.

Before the first meeting of the board of trustees was held, subsequent to such election, the plaintiffs, claiming to be duly elected trustees of said society, applied for and obtained a temporary injunction order restraining the defendants, Harvey and Tompkins, from acting or assuming to act as trustees of said society.

The defendants presented to Justice Bonney a petition setting out the matter hereinbefore stated, charging upon the plaintiffs and others of the trustees misconduct at a meeting of the trustees held soon after said election, and that it was their intention to prevent the attendance of the quorum at the meetings of the trustees, and thus seriously impair the interests of the society, and praying that the plaintiffs be enjoined from acting or assuming to act as trustees. The injunction, as prayed for, was granted and served.

· The applications now pending before me are to continue these injunctions, and by the defendants to modify plaintiffs' injunction, so as to allow one of the defendants to act as trustee in the event it shall be necessary to do so in order to form a quorum for the transaction of business.

Before proceeding to examine the question whether the court has the power to issue an injunction order in favor

of either party in this court, it is proper to inquire which set of the claimants is duly elected trustees.

By section 3 of the general law relating to the incorporation of religious societies, it is provided that on the day of the first election of trustees of any such society, two elders or church wardens, or if there are no such persons, then two others, selected for the purpose, shall preside at such election, receive the votes of the electors, be the judges of the qualifications of electors, and officers to return the names of the persons who by plurality of votes shall be elected to serve as trustees, and the returning officers shall immediately thereafter certify, under their hands and seals, the names of the persons elected, &c.

By section 6, it is provided that all subsequent elections shall be held and conducted by the same persons and in the same manner above described, and the result thereof certified by them, and such certificate shall entitle the persons elected to act as trustees.

The 7th section of the same statute prescribes the qualifications of the voters, and requires the clerk to the trustees to keep a register of the names of such as shall desire to become stated hearers in said church ; and shall therein note the time when such request was made, and the clerk shall attend all subsequent elections, in order to test the qualifications of such electors, in case the same shall be questioned.

There was no such list kept as is required by the 7th section, and hence the test of qualifications which such a document would furnish is wanting. But it is not claimed that such a list is necessary to the validity of the election, or that the qualifications of voters may not be ascertained by other means. (*The People* agt. *Peck*, 11 *Wend.*, 604.)

The inspectors are declared to be judges of the qualifications of voters. Their action on that subject is judicial, and can only be reviewed in an action or proceedings instituted to review such determination.

To constitute a person a voter he must have been a stated attendant on divine worship in the said church at least one year before such election, and shall have contributed to the support of said church, according to the customs and usages thereof. If a voter is challenged on the ground of the absence of some one or more of these qualifications, the inspectors must inquire, ascertain and determine, whether the voter possesses them.

The question arises for decision when the voter offers his vote, then the challenge is made, and the voter's right to vote must be determined before it can be received or rejected. If the vote is not challenged, there is no question for decision; the vote must be received. (*In the matter of the Chenango County Mutual Insurance Company*, 19 *Wend.*, 635.) If he is challenged, the judge must in some mode ascertain and determine the question of qualification. For what purpose? In order that the person challenged may vote if qualified. When the vote is received the party has voted—his qualifications are ascertained and the judge has decided the question.

The voter has an interest in the determination; he has a right to be heard, and in many, if not most cases, he is the only person who can speak with certainty as to his qualifications. It cannot be possible that the legislature intended that three inspectors should receive votes without challenge or in defiance of a challenge, and after the election is ended enter into an examination of the qualifications of the voters, and count or reject votes as they shall then determine on the question of qualification. How are they in that stage of the business to ascertain which of the ballots to withdraw from the box and reject? Inspectors cannot be presumed to know the contents of the ballot. How then are they to separate the legal from the illegal— the votes of those qualified from the votes of those disqualified? The very statement of the proposition that such a power exists, excites surprise and alarm. It needs

no argument to show how dangerous and how corrupt such a power in the hands of any class of men, however respectable, would become.

The innocent and legal voter, under such a system, is as likely to have his vote rejected as the illegal and fraudulent one. But it cannot be necessary to discuss the proposition. The inspectors, as judges of the qualifications of voters, must decide when the vote is offered, and the decision then made, if in favor of receiving the vote, is final. From the very necessity of the case a decision cannot be delayed until after the vote is deposited in the box.

The act of the inspectors in rejecting six of the plaintiffs' votes as illegal, after the same had been received and deposited in the box, was wholly unauthorized, and, so far as that question is involved in these motions, I must assume that the plaintiffs had 33 of the 64 votes cast, and, having a plurality, were therefore elected unless there is some other reason shown why they were not thus elected.

It is said that the certificate of the inspectors, given to the defendants, Harvey and Tompkins, is at least *prima facie* evidence of their right to the office and conclusive, except so far as the courts may, in an action on the motion of *quo warranto*, try and determine the right to the office without reference to the certificate.

I have no doubt that a certificate under the hands and seals of the inspectors, that a person has been duly elected a trustee, is *prima facie* evidence of his right; and had the certificate given to the defendants contained nothing but the declaration that defendants are elected, I should deem myself bound to so regard it. But it recites the facts upon which they rely as their justification and authority for declaring these parties elected; and these facts most clearly show that the defendants, Harvey and Tompkins, were not elected. When the inspectors admit that 64 votes only were received by them and placed in the box, and that of these the plaintiffs had each 33, it is shown to

be legally impossible that the defendants, Harvey and Tompkins, could be legally elected. The certificate destroys itself. While it declares the right, it demonstrates that no such right existed. The statute only provides that the certificate shall entitle the party *elected* to the office. The election lies at the foundation of the right. When there is no election, there is no right, and the certificate cannot create it. Much stress was laid on the argument upon this certificate; but so long as it is *prima facie* evidence only of the right, and the right exists to go behind it and inquire into the fact of the election, its importance is not very great. A certificate is not essential to enable the party elected to take his office. If inspectors neglect or refuse to give a certificate, the party entitled will be declared entitled to the office. (*The People* agt. *Peck*, 11 *Wend.*, 604.)

I must hold therefore, that upon the certificate in this case no right is shown in the defendants to the office, and of course, I cannot confer on them the right to a seat in the board of trustees, to which they have no color of right by election.

I have not gone into the question of the qualifications of voters in order to ascertain how the vote would stand, if the votes of legal voters, if any, which have been rejected, had been received, or, if illegal votes, if any, received, had been rejected. I have treated the decision of the inspectors as to the qualification of voters as conclusive for the purpose of this investigation. It would be exceedingly hazardous to try such a question on affidavits, and it would be improper now to allow to either party the benefit of votes offered, but not received, merely because the person offering the vote proves that he intended to vote for plaintiffs or defendants. (*In matter of L. I. Railroad Company*, 19 *Wend.*, 37.) The result of the election must be determined by the votes cast. If illegal votes can be ascertained, they may be rejected; but votes not

received can never be made available in favor of either party.

If these views are correct, then I must consider the plaintiffs as the legally elected trustees of the church, and it only remains to inquire whether, if they are so, the court has power to restrain the defendants—who have no right to the office, from assuming to act as such—or whether upon any other ground the plaintiffs are entitled to an injunction against the defendants.

I have already stated the substance of the complaint. The only additional allegations which it seems to me important to refer to, are, that the inspectors and each of them are charged with having wrongfully and corruptly, designing and intending to evade the law, and also conspiring together to injure and annoy the plaintiffs, and defraud them of their rights and privileges as trustees duly elected by the said society, did illegally and fraudulently, and to the great trouble and damage of the plaintiffs, give and grant to defendants, Harvey and Tompkins, certificates of their election, whereby the said Harvey and Tompkins give out and threaten to act as trustees. The plaintiffs pray judgment that the certificates given to Harvey and Tompkins be adjudged null and void—that said defendants be ordered to grant regular certificates of election to the plaintiffs, and for a temporary injunction restraining the defendants, Harvey and Tompkins, from acting as trustees, and for $5,000 damages sustained by the plaintiffs in the defendants' granting and receiving said certificate, and in their, the defendants, Harvey and Tompkins, acting or assuming to act as trustees.

Section 29 of the Code of Procedure prescribes the cases in which temporary injunctions may be issued, and they are :

1. When it appears by the complaint the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission, or con-

tinuance of some act, the commission or continuance of which during the litigation, would produce injury to the plaintiff.

2. When pending the litigation, the defendant threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiffs' rights respecting the subject of the action, and tending to render the judgment ineffectual.

3. When during the pendency of an action, defendant is about to dispose of his property with intent to defraud his creditors.

This case is most clearly not within the third branch of the foregoing section ; nor is it within the second branch. If the defendants, Harvey and Tompkins, should take possession of the office, the judgment in this case would not be rendered ineffectual. When the judgment shall declare that the plaintiffs are entitled to the office, the defendants then in office will be ousted and the plaintiffs put in. The possession of the office by the defendants in the intermediate time cannot in any manner affect the ultimate rights of the plaintiffs under the judgment if they shall obtain one. It is true, that in the mean time, while plaintiffs are kept out, the duties may be discharged by the defendants; but if there was a quorum, without the plaintiffs and defendants, the same result must follow; hence when the right of the plaintiffs is declared, it can have no retroactive effect upon the right or claim to the office.

The term of office is running, whether defendants are in or out of office, and the business of the corporation must, if possible, be carried on, although the right of a portion of the board be doubted or in dispute.

The right to the injunction then rests on the first branch of the section, and if not given by that, it is not within the power of the court to grant it.

Under the first clause, the test of the right to the injunction order is, does it appear by the complaint that the

plaintiffs are entitled to the relief demanded? The question then is, are the plaintiffs entitled to all or any part of the relief prayed for in the complaint? It cannot be claimed that an injunction, permanent or temporary, is required in aid of that part of the relief which seeks compensation in damages by reason of the wrongful withholding of the certificate and keeping the plaintiffs out of office. It belongs to a court of law to grant that branch of the relief, and nothing is alleged in the complaint to show that an injunction is either necessary or proper in aid of the plaintiffs while prosecuting the suit to obtain that part of the relief demanded.

Another part of the relief sought is that the certificate of the defendants be declared null and void. This calls for an inquiry by the court into the right of the defendants to the office, and necessarily into the regularity of the election. This question ordinarily can only be tried in a proceeding in the nature of a *quo warranto*, which is expressly provided to try the right of a person to an office into which he may have unlawfully intruded. In that action the people may be the party, and the only party plaintiff. The claimant of the office, who seeks to be admitted, may be joined as relator, and the occupant of the office, the defendant, and in such action the right of both the relator and the defendant is determined. This is not an action in the nature of a *quo warranto*, and hence the jurisdiction of the court to grant the relief sought must be found, if at all, under some other head of jurisdiction, but is, as to the part of the relief prayed for now under consideration, a suit in equity to try and determine the right of the plaintiffs and defendants, to the office of trustee of this private corporation.

The chancellor held in *Meekly* agt. *Rochester City Bank*, (11 *Paige*, 118,) that a court of equity cannot interfere to restrain persons claiming to be the rightful trustees of a corporation from acting as such, on the ground that they

have not been duly elected.   Neither will a court of equity entertain a bill by shareholders in an incorporated joint stock company seeking merely to restrain the directors *de facto* from acting as such, on the sole ground of the alleged invalidity of their title to their office.   Whether the parties claiming to be directors do or do not lawfully fill that character depends on a pure question of law—a preliminary question which must be decided before a court of equity can make any decree.   (*Mozely* agt. *Alston*, 1 *Phillips*, *Ch. R.*, 700; *Doremus* agt. *Dutch Church*, 2 *Green*, *N. J.*, *Ch. R.*, 332; *Angell and Ames on Corporations*; 9 *Barb. S. C. R.*, 66, 91, 93; *Affirmed* 1 *Kernan*, 243; 17 *Vesey*, 499; 13 *Vesey*, 509.)

It seems to me that upon these authorities it is impossible to hold that there is any jurisdiction in a court of equity to determine the right to an office, unless the jurisdiction attaches by reason of some considerations in the particular case by reason of which the court of law cannot furnish adequate relief.

The supreme court has the power by 2d R. S., (*5th ed.*, 600, § 5,) to inquire into the regularity of corporate elections, and to vacate them and direct new elections to be held.   But religious corporations are expressly excepted from the operation of this statute, and hence as to the disputed right to an office must be settled in some other manner.

The only way, therefore, to get rid of officers illegally elected, (unless there is jurisdiction in equity,) in religious corporations, is by *quo warranto*.   But to entitle the people to bring such an action, a mere claim to be an officer is not enough—the defendant must be in possession of the office.   (*Angell and Ames on Corporations*, § 714.)   The defendants, it appears, are not in possession of the office, having been prevented by injunction from taking possession before there was an opportunity for the performance of an official act.   Under these circumstances, it seems to

me the plaintiffs cannot ask relief on the ground that the defendants are not in office when their own act has prevented defendants from taking it.

The remedy by suit, in the nature of *quo warranto*, is the plain and obvious remedy for the plaintiffs. That action is adapted to the case. If required it may be tried by a jury in a court of law, where legal questions are properly cognizable. The reasons given by the courts of equity for not taking jurisdiction of questions of corporate elections, is that the right to the office involves a legal question, and that should be tried and determined at law before resort is had to equity.

Although the distinction between actions at law and in equity is abolished, yet the inherent distinction between legal and equitable jurisdiction and relief exists, and it is not in the power of constitutions or legal enactments to abolish it. This natural and necessary distinction is recognized by the constitution, and is provided for by the Code, in prescribing different modes of trial for the two classes of actions.

There is but one other ground on which relief in equity in this case can be claimed, and that is the fraud charged on the inspectors in counting the votes and awarding the certificate. Fraud is one of the most extensive branches of equitable jurisdiction, and indeed it may be said that it is the prominent and peculiar head of jurisdiction in courts of equity. But courts of law have had concurrent jurisdiction with those courts in matters of fraud; but owing to the power of courts of equity to shape the relief granted to the necessity of the case in hand, these courts always have and always will be the appropriate tribunals for the trial of those questions.

But, as I have already remarked, a court of equity refuses to entertain jurisdiction over corporate elections, because the questions involved are legal ones, and were properly triable in a court of law. It would seem to fol-

low that, although fraud may be involved in the election, yet that the right being a legal one, and a legal remedy furnished adapted to the very case, there is no necessity of a resort to courts of equity for relief. Again, if fraud in the inspectors of election will give jurisdiction to the equity court, fraud in the voter should have the same result, and thus, almost every contested election would be drawn away from the usual and proper modes of trial for legal actions, and transferred to the courts of equity, no more capable of affording relief than the courts of law.

There is still another reason why neither courts of law nor equity should try the right to an office in an action between individuals. Such a trial does not determine the right, it does not end the litigation. In an action in the nature of *quo warranto* the people are the parties plaintiff, or with the person claiming the office as relator, against the defendant, the person in office. In such an action, not only is the right of the defendant determined, but that of the relator also ; hence, if the defendant is found not entitled, but the relator is, the former is put out and the latter put in ; but if neither is entitled, both are ousted and the office declared vacant. Every claimant is bound, his rights determined and a final end put to the litigation. In an action between the claimants for the office when the people are not a party, the rights of the latter are not affected, the judgment does not bind them, and they are therefore at liberty to litigate the whole question again, to the great annoyance and expense of parties, and making unnecessary labor for the court.

I will not say that in no case may a court of equity entertain jurisdiction between individuals, to try the right to an office. Circumstances may be supposed when by the act of the claimants of the office holding the evidence of right to it, but not in fact entitled, the proceeding by *quo warranto* or *mandamus* could not be instituted, and yet the other party claiming title to the office cannot get into

possession. In such case, to prevent a failure of justice, a court of equity would assume jurisdiction and determine the right.

No such necessity is shown or alleged in this case, and hence I must hold that this court, as a court of equity, has not power to grant the plaintiffs the relief demanded, and therefore I cannot continue the injunction. I have already said, that if the plaintiffs are entitled to damages, the continuance of the injunction is not essential to the protection of their right in reference to that relief.

I am aware it is not usual, nor ordinarily is it proper, to inquire into the right of the court to grant relief upon an application for an injunction; still less to refuse an injunction when the question of jurisdiction is doubtful, and when refusing, it may produce injury to the party applying. But the Code requires as prerequisite to the injunction, that it appear by the complaint that the party is entitled to the relief demanded. This involves the question of the power of the court to grant relief in the case, and as I have no doubt but that the court, as a court of equity, has no power to grant the relief demanded in this case, I must deny the plaintiffs' motion for a continuance of the injunction.

The motion of the defendants is also denied, without costs to either party.