HUBERT O. THOMPSON, RESPONDENT, *v.* THE SOCIETY OF TAMMANY, OR COLUMBIAN ORDER IN THE CITY OF NEW YORK, APPELLANT.

*Initiation of members into a corporate society — when not restrained by injunction — Summary applications to settle elections should be under* 1 *Revised Statutes* 603, § 5.

This action was brought by the plaintiff, as a member of the Society of Tammany, to restrain it, its agents, officers, etc., from initiating certain persons alleged to have been elected members thereof at a meeting held on December 31, 1878, and from doing anything to complete or carry into effect such pretended election, on the ground that the meeting, at which such persons were elected, was irregularly and fraudulently held.

The complaint alleged that the society, unless restrained from so doing, would initiate such persons, as members, which would injure and deprive the plaintiff of his legal rights, privileges and powers as a member, and of his rightful voice in the management and disposition of the property and affairs of the society. It was not claimed that plaintiff would be deprived of any pecuniary benefit by the admission of such members. The defendant was incorporated by chapter 115 of 1805, as amended by chapter 593 of 1867, for the purpose of affording relief to the indigent and distressed members of the society, and to their widows and orphans.

*Held,* that a temporary injunction was improperly granted, and should be vacated. That if the election was irregular, the plaintiff's proper remedy was by a summary application to the court, under 1 R. S., 603, § 5. (Per DANIELS, J.)

APPEAL from an order continuing an injunction, and also from an order denying a motion to strike out certain allegations of the complaint.

*A. J. Vanderpoel, James C. Spencer, John D. Townsend* and *F. F. Vanderveer,* for the appellant. This whole subject is covered by 1 Revised Statutes, p. 603, § 5, and the language of that section is a complete answer to the criticism of the learned judge at Special Term, in which he limits the word "franchise" as used in this behalf in the section of the Code, relative to the writ of *quo warranto,* hereafter quoted; to corporate offices, and excludes from it membership in a corporation. The court will not interpose by injunction unless some civil right or pecuniary interest is imperiled. (*Hurst* v. *Harvey,* 32 Barb., 55; *Mickles*

v. *Rochester City Bank*, 11 Paige, 112; STRONG, J., *Wetmore* v. *Story*, 3 Abb. Pr., 274; *White* v. *Brownell*, 2 Daly, 329; *Baptist Church* v. *Witherell*, 3 Paige, 296; *Wetmore* v. *Scovell*, 3 Edw. Ch., 515.) If the defeat of the plaintiff's views by means of the new members constituted an injury that the court would interfere to prevent, it must appear, as it does not in this case, to be certain and imminent, to authorize such interference. (*Ogden* v. *North River Bank*, 6 Johns Ch., 160; *Sherwood* v. *Connolly*, 35 How. Pr., 124) It appears on the face of this complaint that all other members of the Society of Tammany or Columbian Order, similarly situated with the plaintiff, are not made parties plaintiff. The authorities both in England and this country agree that for a complete determination of all rights affected by the action, such joinder is necessary. (*Moody* v. *Alstin*, 1 Phillips Chr., 791; *Greaves* v. *Gouge*, 69 N. Y., 154; *Taylor* v. *Earle*, 8 Hun, 1; *Gray* v. *N. Y. and V. S. S. Co.*, 3 id., 383; *Wood* v. *Draper*, 24 Barb., 187; *In the Matter of the Election of Trustees of the Pioneer Paper Co.*, 36 How. Pr., 102; *Smith* v. *Rathbone*, 66 Barb., 402.) A court of equity has no jurisdiction in this case. No authority has been cited, and none can be cited in which a court of equity has granted an injunction in an action, the object of which was to test the title to an office, or the legality of an election. (*Albany and Susquehanna R. R. Case*, 57 N. Y., 161; *Mickles* v. *Rochester City Bank*, 11 Paige, 118; *Attorney General* v. *Clarendon*, 17 Ves. Jr., 491; *Tappan* v. *Gray*, 9 Paige, 507, 509; *S. C.*, 9 id., 507; affirmed, 7 Hill, 259; *People* v. *Utica Ins. Co.*, 2 Johns Ch., 371; *Att'y Gen.* v. *Bk. of Niagara*, Hopk., 354; *Mott* v. *Connolly*, 50 Barb., 516.) The party has his complete remedy at law. This case stands in the same position as if a person were elected an officer of the Tammany society, and fraud was alleged in his election. The remedy to test his title to the office would be *quo warranto.* (Section 432 of the Code; 2 R. S., 582, as to *quo warranto.*) This membership of the Tammany society is a franchise, and it is well-settled that the right to a franchise can only be tested on mandamus or *quo warranto.* (1 Burr., 407; 5 T. R., 377; *People* v. *Medical Society*, 24 Barb., 577; *S. C.*, 32 N. Y., 187; *Rex* v. *Cudlipp*, 6 T. R., 503; 3 id., 599; Code on Informations, vol. 1, 138; *Rex* v. *Rowe*, 4 Burr., 2287; *Rex* v.

*Williams*, 2 id., 482; *Dr. Ashew's Case*, 4 id., 2195; *King* v. *White*, 4 Nev. & Perry, 84; Tapping, 96; *Rex* v. *West Love*, 5 D. & R., 598; *S. C.*, 3 B. & C., 677; *R.* v. *London* [*Mayor*], 4 M. & R., 54; *S. C.*, 9 B. & C., 1; *The U. S. ex rel., etc.*, v. *Com. of Dubuque Co.*, 1 Morris [Iowa Rts.]; *Lanson* v. *Kolbenson*, 61 Ill., 405; *King* v. *Parry*, 6 Ad. & El., 810; *King* v. *White*, 5 id., 613; *Reg* v. *Mayor of Eye*, 9 id., 670; *Queen* v. *Mayor of Harwick*, 8 id., 919; *Rex* v. *Corp'n of Carmarthen*, 2 Burr., 869; *The Queen* v. *Pepper*, 7 Adol. & El., 748; *Rex* v. *Breton Mayor*, 2 Jeyes, Town Clerk of Northampton, 2260; 4 Burr., 2260; *Commonwealth* v. *Union Fire, etc.*, 5 Mass., 230; *Paynter* v. *Clegg*, 9 Phila. R., 480; *Updegraff* v. *Craus*, 11 Wright [Penn.], 103; *Owen* v. *Whittaker*, 20 N. J. Eq., 122.)

*John K. Porter*, for the respondent. *Quo warranto* would not be an adequate remedy. Pending it the plaintiff would suffer the very injury he is seeking to prevent. In such a case equity will intervene where equitable grounds appear. Plaintiff has a right to enjoin the corporation from fraudulently putting him in a position where he can get no relief except by *quo warranto*, and then an inadequate remedy. (*Hart* v. *Harvey*, 32 Barb., 55; *Tyack* v. *Brumley*, 1 Barb. Ch., 519.) The mere fact that the relief asked is connected with or may affect an election does not oust the jurisdiction of equity. (*McIlvain* v. *Christ Church of Reading*, 28 Legal Int., 126; McCrary's Am. Law of Elections, § 319; *Brown* v. *Pacific M. Co.*, 5 Blatch. [C. C.] R., 525; *Abbott* v. *Am., etc.*, 4 id., 489; *Hille* v. *Parish*, 1 McCart. [N. J.], 380.)

DANIELS, J.:

The injunction, which the order appealed from continued, restrains the Society of Tammany or Columbian Order, in the city of New York, its agents, officers, servants and members from initiating as members of the corporation, one hundred and forty-seven persons alleged to have been elected as members at a meeting held on the 31st day of December, 1878, and from doing anything to complete or carry into effect the pretended election of those persons, and from permitting any of them to do any act, or enjoy, or exercise any power, privilege or right as members of the

corporation by virtue of their pretended election. It was issued on the 6th day of January, 1879, on the complaint and application of the plaintiff as a member of the corporation, for the reason that the meeting was alleged to have been irregularly and fraudulently held, at which these persons were in form elected as members of the corporation. But whether the facts proved supported this position will not require special examination in determining the disposition which should be made of the principal appeal. As to that, the main point to be considered is whether assuming it to have been established as a matter of fact that the election was illegal, the right to the injunction has been maintained.

Before the defendant was incorporated, which was done by special act passed April 9, 1805, the society had existed as a voluntary association, for the purpose of affording relief to the indigent and distressed members of the said association, their widows and orphans, and others who " might be found proper objects of their charity." And it was for the more effectual observance of those purposes that the charter was enacted, and the society invested with corporate existence. It was clothed with the power to acquire and hold real and personal property of the clear yearly value of $5,000, which by chapter 593 of the Laws of 1867, was extended to the yearly income of not exceeding $50,000. And this was for the purpose, as the charter expressed it, " of enabling them the better to carry into effect the benevolent purpose of affording relief to the indigent and distressed." And after adding the power to lease, demise and dispose of its property according to its will and pleasure, it was further provided that the society, " and their successors, shall have power from to time, to make, constitute, ordain and establish by-laws, constitutions, ordinances and regulations, as they shall judge proper, for the election of their officers ; for the election, or admission, of new members of the said corporation ; and the terms and manner of admission ; for the better government and regulation of their officers and members ; for fixing the times and places of meeting of the said corporation ; and for regulating all the affairs and business of the said corporation. The only restriction to which this very ample grant of corporate power was subjected was, that the by-laws and regulations should not be

repugnant to the Constitution or laws of the United States, or of this State. (Webster's Laws, vol. 4, 278, ch. 115, Laws of 1805.)

The more important of these provisions, requiring to be considered in the disposition of the appeal, is that by which the avenue for the admission of new members has been designated as an election. This conformed to what has been otherwise regarded as the suitable designation of the proceeding. For among the essential powers possessed by corporations, that " of electing members in the room of such as are removed by death, or otherwise, has been deemed to be necessarily implied." (Angell & Ames on Corp. [4th ed.], § 110.) And that the admission of new members required the exercise of the usual functions of an election has been, in terms, conceded by the complaint in this action, and it was assumed by the action of the corporation itself in framing its by-laws. In this view the allegations have been made that the corporation ordained and established certain regulations for the election and admission of new members. Among these were the provisions that new members might be elected by the votes of the members of the corporation at any regular meeting ; that thirteen members should be sufficient to constitute a legal meeting ; and that two adverse votes in every sixteen should be sufficient to defeat the election of a new member ; and after his election the new member should be initiated according to certain prescribed forms in order to become a member of the corporation. It is further alleged that the members who assembled at the meeting stated to have been improperly convened on the 31st of December, 1878, pretended to elect 147 persons, or thereabouts, members of the corporation. And that the persons so elected will be initiated as members of the corporation as soon as that can conveniently be done, if its action in that respect shall not be restrained. The complaint proceeded throughout upon this subject on the theory suggested by the charter and the by-laws, that the selection of new members was an election. And it was followed in the same manner by the injunction which, in its references to what had been done, mentioned it as a pretended election. The charter, by-laws, and the allegations made, require that it should be held and deemed to be an election, which at the utmost was irregularly held for want of the notice which it had been provided should be

published for the purpose of lawfully convening the meeting at which it took place. The proceeding itself included the attributes of an election. The candidates for membership at first appear to have been proposed for the consideration of the members, and whether they should become so or not was next to be determined by vote to be taken at a regular meeting of the society. This was an election as much so, certainly, as that provided for the ordinary choice of corporate officers. And, as an election, it was made subject to the summary control of this court for the correction of any intervening or fundamental irregularity.

Upon this subject it has been enacted in very general terms that "it shall be the duty of the Supreme Court, upon the application of any person, or persons, or body corporate, that may be aggrieved by, or may complain of, any election or any proceeding, act or matter, in or touching the same (reasonable notice having been given to the adverse party, or to those who are to be affected thereby, of such intended application) to proceed forthwith and in a summary way to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matters or causes of complaint, and thereupon to establish the election so complained of, or to order a new election, or make such order and give such relief in the premises as right and justice may appear to the said Supreme Court to require." (1 R. S., 603, § 5.) And the only corporations excepted from the control of this enactment are those of incorporated libraries, religious societies, and moneyed corporations whose charters have been passed, renewed or extended after the 1st day of January, 1828. (Id., 601, § 11.)

This provision was made in very extended terms, so much so that it included corporations of the class to which the defendant belonged. And it was intended by it to supply a speedy and informal remedy for the correction of improper proceedings in corporate elections. It has not in terms or by any fair implication been confined to elections for corporate officers. But it has been expressly extended to any election. And in the provision concerning the giving of notice it has been made evident that it was not designed to be restricted to controversies in which there might be an adverse party, as would be the case where the election of an officer might be in contest. For notice has been required,

when there may be no adverse party, to those who are to be affected by the application. It was of course within the power of the Legislature to have restrained this remedy to the election of corporate officers. But if that had been the design some terms would have been employed to express it when it would have been so easy and so natural to have done so. It was not done, but the proceeding was made applicable to all elections. And no good reason existed for discriminating as to this remedy between the election of a member merely, and that of an officer. The former was of the least practical consequence to the corporation. It was of much less importance than the election of an officer, and for that reason might more properly be made the subject of a summary remedy for its correction. It would be unreasonable to hold that the provision should afford the means of setting aside an election held to fill an office, but that it should be inapplicable to a similar proceeding to add a member. There is nothing in the language used, nor in the purpose or object of the enactment, warranting such a discrimination. And that it was intended to include more than an election for a corporate office is evident from the proviso added to the portion of the section already quoted. For, by that, more formal proceedings are authorized which may be adopted for the trial of the right to the office or offices of the corporation, and in addition to that, of the franchise also which may be drawn in question. This last provision was a plain indication that more than the election to an office might be tried and determined in this way. For it in terms included that of a disputed franchise arising out of, or dependent upon, a contested election.

This proviso, as well as the portion of the section preceding it, have both been evidently framed in such language as to render it the duty of the Supreme Court to correct all irregularities and abuses in corporate elections, in the same summary way, for whatever purpose they may have been held. This design was certainly exhibited by the former part of the section, for it was made to include any election, whether contested by an adverse claimant under it, or simply affecting another person without any other claimant of the same right. And the proceeding may be instituted either by a person or persons aggrieved, or by one simply

complaining that the election was for any reason unlawfully held. By the latter portion of the section, also, the remedy was distinctly applied to more than a contest for corporate offices. It was extended to the right to a disputed franchise, when the election was such as affected it. This was not limited to a franchise of the corporation itself, and that could not have been what was intended by the provision. For those franchises are defined and fixed by the charter and the constitution and by-laws adopted pursuant to it. They are permanent in their nature, and not liable to the fluctuations of an election. The franchise which it was contemplated might be involved in dispute by means of an election must, therefore, have been something different from those appertaining to the corporation itself. And the only others that could ordinarily be placed in that condition are those which, by means of an election, can be vested in individuals either as the officers or members of the corporation. Those of officers were in plain terms otherwise clearly provided for, and consequently could not have been intended to be included within this other provision concerning a disputed franchise. It must for that reason have been designed by this provison to provide for what had not already been so specially enumerated. And to include all those franchises which it was not convenient to particularize, and which still might be affected by and made the subject of an election, not held for the selection of corporate officers. Among them may very properly be included that of membership, with the rights and privileges incident to that relation. And as every other corporate election had been subjected previously to this statutory proceeding, that must have been considered to be a franchise, and within the legal meaning of that term as the statute employed it. That could very appropriately have been so understood, for a franchise is nothing more than a special privilege created by law, and it can as well be conferred upon an individual as a member of a corporation, as upon any aggregation of persons associated for its formation. In a strictly legal sense the right of membership in a corporation of this description is a franchise, and when claimed by virtue of a contested election it will consequently be brought within the controlling authority of this statutory remedy. It was so defined in the case of the *Bank of Augusta* v. *Earle* (13 Peters, 519), where it was declared

that "franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country generally of common right. It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from a law of the State." (Id., 595.) The right of a person to membership in this corporation by virtue of an election was certainly of this description, for it was derived solely, and could only be enjoyed, under the charter and the by-laws made pursuant to it and entitled to similar weight as authority. That was the view taken of the signification of this term in *People* v. *Erie Co. Medical Society* (24 Barb., 570, 577), and *People* v. *Same* (32 N. Y., 187, 191). And it brought the disputed election within the scope of this statutory remedy. For that reason the controversy was placed under the jurisdiction of this court as a court of law, and it results from this conclusion that an action for an injunction was not the appropriate remedy. *Mickles* v. *Rochester City Bank* (11 Paige, 118).

If, under the preceding practice of courts of equity, they had acquired jurisdiction over the unqualified subject of contested corporate elections, the enactment of this remedy would not have superceded such authority. (Sedgwick on Stat. & Const. Law, 93–97.) But that was not the case, for courts of equity exercised no such previous authority. The rule in equity on this subject has been held to be that "when the object is simply to determine the regularity of an election, or to declare an office to which any one has been duly elected forfeited, a court of law is the proper and only competent tribunal." (*Johnston* v. *Jones*, 32 N. J. Eq., 216, 226; High on Injunctions, §§ 781, 789; *Hartt* v. *Harvey*, 32 Barb., 55, 65.)

The injunction in this case was claimed for the simple reason, as that was assigned by the complaint, that the corporation, unless restrained from doing so, would initiate the persons whose election was questioned, as members, which would injure and deprive the plaintiff of his legal rights, privileges and powers as a member, and of his rightful voice in the management and disposition of the property and affairs of the corporation. And the other members, it was alleged, were in danger of sustaining similar injury. But

it was not stated that either would be deprived of any pecuniary benefit which, in any event, he might be entitled to enjoy under the charter and by-laws. The only apprehended injury was that his controlling ability as a voter would be diminished. That, however, would not certainly follow. For as it was not shown that these persons were reasonably sure to vote the other way, no good ground existed for supposing that the plaintiff would sustain even this injury by their admission. One-half, or even more than that, might vote with him. And if they did he could sustain no possible injury from them in the effect of his vote. The injury anticipated was merely conjectural, dependent on the views these persons, or such of them as should vote, might entertain on the subjects to be settled in that way. It was not shown that they had become committed to any adverse policy for the government of the corporate affairs ; but it did otherwise appear from the affidavits of sixty-seven of them that they had espoused no course of conduct, inconsistent with the true interests and future prosperity of the society. For these reasons it was not proved, either by the complaint or the affidavits, that the plaintiff stood in danger of any act on their part that would produce injury to him, or that the defendant threatened, or was about to do any act in violation of his rights. And one or the other was required by the statute to entitle him to an injunction. (Code of Civil Procedure, §§ 603–604.)

It does not appear when the injunction order was served. But it could not have been before the sixth day of January, which was the day of its date. And, by the complaint, it was shown that a regular meeting of the corporation might be held on the evening of that day. By the affidavit of the secretary it appears to have been so held, and that the plaintiff was present at the time as one of the members. Then the subject of the meeting, at which the controverted election was held was considered, and to the extent of approving the minutes, what had then taken place was approved by the action of this meeting. This was not conclusive over the controversy, but it showed by the action of a regular meeting that the members of the society who, as they had been convened, were competent to elect all these persons as new members, were not disposed to disapprove of what it is alleged

had been so irregularly performed. Without placing any special stress upon this approval, it is enough for the disposition of the appeal that the remedy of the plaintiff is by the summary application specially provided by the statute, and not by means of an injunction, and that no such impending injury to the plaintiff's rights has been shown to be probable, as will justify resort to an order of that nature. These obstacles in the plaintiff's way must dispose of the case as it has now been presented, which will render the consideration of the appeal from the other order unnecessary. The objections now allowed to prevail, as controlling, do not seem to have been pressed upon the consideration of the court hearing the motion. If they had they would undoubtedly have been allowed the same weight as has now been accorded to them. But, without indulging in probable conjectures upon this subject, it is enough to add the case must be at present disposed of on account of the effect to which these objections are entitled. The order continuing the injunction should be reversed, and the appeal taken from the order denying the motion to strike out certain portions of the complaint dismissed, without cost to either party, and without prejudice to the application which the statute has authorized to be made to determine the legality of the election.

POTTER, J.:

I have not had a sufficient opportunity to reach a conclusion satisfactory to myself in relation to the main question discussed by my brother DANIELS in this case. It is both difficult and novel. I am not prepared to decide that the statute referred to by him is applicable to an election to membership in a social club or benevolent society. I am willing to concur with his view that there is no occasion or propriety in a resort to the extraordinary remedy of an injunction. Upon the case, as presented by the papers, it would seem that one member assumes to restrain the action of the society of which he is a member. It is practically the case of a single member's attempt to control the body of which he is but one.

If the election of the one hundred and forty-seven members was illegal, that can be determined in the due course of proceeding, and the illegitimate members rejected or the society can refuse to initiate them. I, therefore, think no sufficient case is made for an

injunction and concur in the result that the injunction shall be dissolved.

Present — INGALLS, P. J.; DANIELS and POTTER, JJ.

Order continuing injunction reversed, and appeal taken from the order denying motion to strike out certain portions of the complaint dismissed, without costs to either party and without prejudice to the application which the statute has authorized to be made.