HERMAN REIS, SR., AND OTHERS, RESPONDENTS, *v.* WILLIAM
ROHDE AND OTHERS, APPELLANTS.

*Conflicting claims to the office of trustee of a religious corporation — when those in possession of corporate property may have rival claimants restrained from disturbing their possession.*

Although the title of rival claimants to the office of trustee of a religious corporation cannot be determined in an equitable action brought by one claimant, or set of claimants, against another claimant, or set of claimants, yet an equitable action may be brought by persons who claim to be trustees of the corporation, and who are recognized as such by the pastor and the religious organization of the corporation, to restrain persons claiming to have been elected trustees from forcibly divesting the plaintiffs of their possession of the property and records of the corporation, and from interfering with them while acting as trustees, and also restraining the defendants from acting as trustees.

APPEAL from an order of the Onondaga Special Term denying a motion to vacate an injunction which restrained the defendants, until the further order of the court, from in any way interfering with the plaintiffs in the use, enjoyment and possession of a church edifice belonging to a religious corporation, or interfering with the individual plaintiffs in acting as trustees thereof, and also restraining defendants from acting as trustees.

The action was brought by a religious corporation, and four persons claiming to be trustees of it, against five other persons who claimed to have been duly elected to that office.

*Goodelle & Nottingham,* for the appellants.

*Louis Marshall,* for the respondents.

MERWIN, J.:

The number of the trustees of the corporation plaintiff was seven. Prior to December 18, 1883, the offices of four of them had been judicially declared vacant. The office of one more expired January 1, 1884. For the purpose of filling those vacancies existing, and to exist, an election was in proper form called for December 18, 1883. Two elders were chosen as presiding officers, and they under the statute were the persons to certify as to the result of the election. The defendants claim they were elected and one of the presiding officers so certifies. The plaintiffs Reis,

Korb, Wiegand and Schwartz claim that they and one Oswald were elected, and one of the presiding officers so certifies. Under the statute both presiding officers must join in the certificate in order to furnish to the party the *prima facie* evidence of election that the statute provides for. So that in the present case neither party has the statutory evidence of election.

The defendants lay stress upon the fact that they were orally declared elected. Still the force of such declaration, if there was one, depends on the surrounding circumstances, about which there is dispute and it is not what the statute makes *prima facie* evidence. Both sides concede that the question as to who in fact were elected cannot be tried in this action. That being so, will this court, by injunction, control the possession?

Of the three in office at the date of the election one was the plaintiff Reis, whose term expired on January 1, 1884, and who claims to have been re-elected and who would hold over in case there was no election. Of the other two one sides with the plaintiffs and the other with defendants. The pastor of the society, the vestrymen and one of two elders recognize the plaintiffs as properly elected. So that it is to be assumed that the religious organization side with the plaintiffs.

The question then would be whether, in the absence of the statutory evidence of election, that party which is recognized by the religious organization and by the majority of those in office at the time of the election should not also be recognized by the courts until the determination of the legal right in the proper forum. Were the election entirely invalid, or had there been no election at all, the control by the trustees then in office would have been substantially as the plaintiffs now desire it to be. The main object of a religious corporation is the religious culture of the society connected with it, and that will be better subserved by harmony between the religious and temporal organizations.

This seems to be a case calling for equitable interference (2 High on Injunctions, § 1315; *Kerr* v. *Trego*, 47 Pa. St., 292–6; *Lutheran Ev. Ch.* v. *Gristgau*, 34 Wis., 328–336), not on the ground, as stated in the injunction order, that the individual plaintiffs were duly elected, but on the ground that they were recognized by the authorities then existing, temporal and spiritual, and should not be

interfered with by those not having the statutory evidence of election and not having their right established at law. As said in *Kerr v. Trego*, the confusion that would be caused by two opposite parties pretending to act as the society should be stayed.

It follows that the order appealed from should be affirmed. This affirmance should be without · prejudice to any proceedings by defendants at law to secure their rights.

FOLLETT, J. :

The title of rival claimants to the office of trustee of a religious corporation, cannot be determined in an equitable action, brought by one claimant or set of claimants against another claimant or set of claimants. The remedy is by an action brought by the attorney general in the name of the people. (Code Civil Pro., §§ 1948 to 1956, and § 1984; *Hartt* v. *Harvey*, 32 Barb., 55; *The North Baptist Church* v. *Parker*, 36 id., 171.) Such is the rule in respect to all contested corporate elections, except as it is otherwise provided by statute. (*People* v. *A. and S. R. R. Co.*, 57 N. Y., 161, 171, 172.)

This action was not brought to determine the title of the rival claimants to the trusteeships, but to restrain the defendants, who are out of possession, from forcibly divesting the plaintiffs of their possession of the property and records of the corporation. No case has been cited in which the courts of this State have determined whether an injunction may be issued for this purpose.

*People* v. *Mattier* (2 Abb. [N. S.], 289) and *People* v. *Conklin* (5 Hun, 452), relied upon by the defendants, hold that trustees *de facto* of corporations will not be restrained from continuing to act as trustees during the pendency of actions to try their title to the trusteeships. *People* v. *Mattier* arose out of a contest for the control of the New York State Inebriate Asylum, and *People* v. *Conklin* arose out of a contest over the control of a savings bank. *Mickles* v. *The Rochester City Bank* (11 Paige, 118), holds that acting trustees of a manufacturing corporation will not be restrained from acting, because the validity of their election is questioned in a suit by a stockholder to wind up the corporation, especially when it is not alleged that the trustees are irresponsible, or that they are wasting the property of the corporation.

The rule that acting trustees will not be restrained from continuing to act, at the suit of rival claimants out of possession, affords no support to the defendants' contention that the court is without power to restrain claimants out of possession from interfering with the property of the corporation in the possession of acting claimants.

*Tappen* v. *Gray* (3 Edw. Ch., 452; reviewed, 9 Paige, 507; affirmed, 7 Hill, 259); *Mayor* v. *Conover* (5 Abb., 171); *Mott* v. *Connolly* (50 Barb., 516); *Coulter* v. *Murray* (15 Abb. [N. S.], 129); *Morris* v. *Whelan* (11 Abb. N. C., 64; S. C., 64 How., 109), and *Palmer* v. *Foley* (44 id., 308; affirmed, 4 J. & S., 14; S. C., 45 How., 110), all arose out of the contests for municipal offices, and with the exception of *Palmer* v. *Foley* all hold that claimants of municipal offices will not, in suits brought by rival claimants, be enjoined from acting. These cases have little bearing upon the question now presented. The policy of this State has been not to permit citizens to control the actions of public officers by suits brought in their own name or interest, except pursuant to enabling statutes. Religious corporations are in no sense governmental, and cannot be under our Constitution. Such corporations consist of their members who own, and through their trustees control the property. (*Robertson* v. *Bullions*, 11 N. Y., 243; *Gram* v. *Prussia, etc., Society*, 36 id., 161).

The chief distinction between such corporations and business corporations is that there are no stockholders, and that they are organized, not for profit, but for the improvement of society. They are subject to the control of their members, like private corporations.

In New Jersey, where it is held as in this State, that a court of equity is without jurisdiction to determine the rights of rival claimants to offices in corporations, it was said (*Johnston* v. *Jones*, 23 N. J. Eq., 216–226): "If the question of the legality of an election, or whether a certain person holds such an office, arises incidentally in the course of a suit of which equity has jurisdiction, that court will inquire into and decide it, as it would any other question of law or fact that arises in the cause. But the decision is only for the purpose of the suit; it does not settle the right to the office or vacate it, if the party is in actual possession." The case last cited was brought by a railroad corporation and several of its directors to restrain persons claiming to be directors from

interfering with the property of the corporation, in which an injunction was granted and sustained.

In *Featherstone* v. *Cooke* (L. R., 16 Eq., 298) it was held that the existence of disputes between members of the governing body of a company, preventing its affairs from being carried on properly, is a sufficient ground for an injunction, restraining directors out of possession from interfering with the property of the corporation in the possession of acting directors.

In *Lutheran Evangelical Church* v. *Gristgau* (34 Wis., 328) this question is fully discussed, and it is held that an action in equity to restrain the action of claimants to trusteeships, whose title to office is contested, may be maintained.

In *Ewing* v. *Thompson* (43 Penn. St., 372–379) an injunction, restraining a claimant of the office of sheriff, who was out of possession, from interfering with a claimant of the office who was in possession, was granted and sustained, pending the determination of an action at law to determine who was legally elected.

In *Kerr* v. *Trego* (47 Penn. St., 292) the doctrine of the last case was again asserted. It was said: "If a private partnership or corporation were to fall into a similar confusion, affecting all its members and all its creditors, we can think of no better remedy than this (an injunction) for staying the confusion that would be caused by two opposite parties pretending to act as the society. It is the very remedy usually adopted when churches divide into parties, and we applied it in three such cases in the last year. Therein we decided directly on rights of property, because that became the aim of dispute. Here we must decide on the right to public functions, because that is here the purpose of the dispute. The main question in all such cases is regularity of organization, and the right to functions and property is a mere consequence of this. May one of the conflicting bodies, or the members of it, maintain this action (an equitable one for an injunction) against the other? We think they may. This could not be doubted in relation to private corporations and partnerships. But it is argued that, in relation to public corporations, the attorney general alone can file such a bill. We do not think so. It is right for those to whom public functions are intrusted to see that they are not usurped by others. Either of these bodies has the right to demand

of the courts that it and the interests of the public alleged to be committed to it shall be protected against the usurpation of the others." (47 Penn. St., 295–296.)

The Pennsylvania cases go further than the cases of this State in asserting the jurisdiction of a court of equity, and much further than is necessary to sustain the jurisdiction of this court over this case. The case last cited distinctly asserts the jurisdiction of a court of equity to control the action of contending trustees of churches and of private corporations. A legal action in a court of law is the appropriate mode of determining the right of possession or title of rival claimants to real property; but when a claimant out of possession threatens waste or an irreparable injury, a claimant in possession may maintain an action to restrain, and in such and like cases the right of possession or title may be determined in so far as it may be necessary to determine the action.

If this court has not jurisdiction of such an action, with the power of restraint, the seal, records, temporalities and franchises of such corporations are exposed to the hazards incident to frequent and perhaps violent changes in possession, the control finally resting with the claimants possessing the most temerity, physical force and pertinacity; and thus exposing to destruction, by the feuds of contending claimants, the rights of individual corporators and every interest which the corporation was organized to promote, besides engendering a multiplicity of suits.

We think this court has jurisdiction to restrain the claimants of trusteeships out of possession (in an action brought by a religious corporation and the trustees in possession) from interfering with the property, records and seal of the corporation in the possession of acting trustees, until the claimants out of possession establish their title to the trusteeships in an action brought for that purpose. To this extent the injunction in this case should be sustained.

Present — HARDIN, P. J., FOLLETT and MERWIN, JJ.

Injunction order modified so as to allow the defendants to take any legal proceedings to secure their rights, and as modified affirmed, without costs.